# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WADE CRUTCHFIELD, | * | |
| RONDA CRUTCHFIELD, | * | |
| AND DIANE CRUTCHFIELD, INDIVIDUALLY, | * | |
| AND ON BEHALF OF THE ESTATE OF | * | CASE NO.: _____ |
| KIMBERLY ANN CRUTCHFIELD, AND | * | |
| ON BEHALF OF TERRY LOMOND JOHNSON, | * | |
| III, AND TEAH DEMETRIA JOHNSON, | * | JUDGE: |
| AND ON BEHALF OF A CLASS OF ALL | * | |
| PERSONS THAT ARE SIMILARLY SITUATED | * | MAGISTRATE JUDGE: |
| | * | |
| PLAINTIFFS | * | CLASS ACTION |
| | * | |
| VERSUS | * | |
| | * | |
| CITY OF NEW ORLEANS, | * | |
| HON. MITCHELL J. LANDREIU, MAYOR, AND | * | |
| NEW ORLEANS CITY COUNCIL MEMBERS | * | |
| STACY HEAD, SUSAN GUIDRY, | * | |
| NADINE RAMSEY, JAMES GRAY, II, | * | |
| JASON WILLIAMS, LaTOYA CANTRELL, AND | * | |
| JARAD BROSSETT | * | |
| | * | |
| DEFENDANTS | * | |

***********************************************

## CLASS ACTION COMPLAINT FOR DAMAGES
## FOR DEPRIVATION OF CIVIL RIGHTS,
## DECLARATORY RELIEF, INJUNCTIVE RELIEF
## AND PETITION FOR WRIT OF EXECUTION

**NOW INTO COURT,** through undersigned counsel, come Wade Crutchfield, Ronda

Crutchfield and Diane Crutchfield, individually and on behalf of the minor plaintiffs, Terry

Lomond Johnson, III and Teah Demetria Johnson, and on behalf of a class of all persons similarly

situated, who have been deprived of their civil rights by the City of New Orleans, Mayor Landrieu

1

and the New Orleans City Council's continuing policies and practices of not paying settlements or judgments, including consent judgments, or and not obtaining liability insurance.

Plaintiffs aver as follows upon information and belief:

**INTRODUCTION**

1.

Despite every opportunity, the City, the Mayor, and the City Council (hereinafter collectively referred to as "the City") continue to be recalcitrant and refuse to pay legal judgements, settlements and consent judgements. The maxim "justice is long delayed is justice denied", was never more true than here where the City has at least 684 unpaid settlements and judgments some dating back more than twenty years to 1996. The City's refusal to meaningfully appropriate funds to pay judgments have enabled the City to operate a scofflaw conspiracy designed to prevent, delay and compromise recovery even where the City has voluntarily entered into consent judgments and settlement agreements. More than sympathy is required to address the City's obstinate deprivation of civil rights. It is time for this Court to recognize that the City's continuing refusal to pay judgments is simply a violation of the civil rights of citizens under color of law. The City's recalcitrance has reached the level where the United States Fifth Circuit has found a sufficient federal interest to trump any anti-seizure provisions, to the extent that such provisions truly exist. See, *Gates vs. Collier*, 616 F.2nd 1268, 1271-72 (5th Cir. 1980).

2.

The City of New Orleans, Mayor Landrieu, and the City Council have engaged in a continuing conspiracy to create a de facto immunity for torts committed by the City and its employees by failing to pay settlements and judgments, while simultaneously, not purchasing

2

insurance and falsely representing that the City is self-insured.    The City, its subdivisions and affiliated agencies, have refused to pay not only adverse judgments, but also agreed consent judgments and agreed settlements, in any realistic, timely, reasonable, orderly, or transparent fashion.

3.

The fact that the City has not paid judgments and settlements for decades satisfies the Fifth Circuit Court of Appeal's criteria for this Court to finally intervene and pierce the City's claim of immunity, if any immunity even exists.  See *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. 1980) ("[W]here a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance.  Federal courts are not reduced to issuing (judgments) against state officers and hoping for compliance.").

4.

Plaintiffs challenge the prior jurisprudence holding that a judgment against the City is not a vested right, and is only a claim to payment in the indefinite future that the City could delay paying for decades.  The current distinction is plaintiffs and class members obtained written settlement agreements and consent judgments based upon the City's misrepresentations that they would be timely paid or that there was a legitimate process to pay them in a timely, orderly, realistic, and transparent process.  The City's refusal to pay and claim to immunity from payment are an affront to both federal and state court authority and independent role as the Third Branch of the federal and state government to enforce the Constitution and the laws to provide justice to victims of the City's conduct.

5.

The City, the Mayor and the City Council have engaged in a conspiracy to promote a legal fiction that the City is immune from paying settlements and judgments, under the City's overly-broad interpretation of Louisiana Constitution Article XII, Section 10.C and La. R.S. 13:5109. The City has attempted to shield its callous actions under the guise of an overbroad interpretation of statutory provisions and which require appropriation of funds to pay a specific judgment before the City can be required to pay a judgment, to allow the City to refuse to pay settlements and consent judgments of its own confection. Freedom from seizure as provided in Article XII, Section 10.A of the Louisiana Constitution does not equate to immunity from liability. The State of Louisiana eliminated sovereign immunity via Article XII, Section 10 of the Louisiana Constitution.

6.

Acceptance of the City's long-held position that it cannot be forced to pay adverse judgments, agreed settlements, and consent judgments unless the City Council appropriates funds to pay a particular judgment or settlement becomes nonsensical when the City simply refuses to appropriate the funds. The City's conduct in depriving citizens of recovery is little different from any other government deprivation of civil rights. The City has flaunted this violation of civil rights in complete disregard for its citizens, the courts, the Constitution and the rule of law.

7.

The City's conduct has become so profoundly obstinate that it is now engaged in Kafkaesque scheme to negotiate reductions to the very judgments and settlements that the City agreed to pay, but refused to pay, under threat of further delaying payments. City Attorney

4

Rebecca Dietz recently stated that the City may attempt to negotiate discounted payments of judgments, but "[t]here's not a final decision on what the discount would be." Kevin Litten, **New Orleans still short on what it owes in court judgments, some dating back to 1990's**, NOLA.com – The Times-Picayune, August 3, 2017, (Exhibit B). In other words, the City has abandoned even the pretext of paying judgments in an orderly, transparent fashion.

8.

In addition to failing to abide by its own contractual agreements, refusal to purchase insurance, the City has represented itself as self-insured, knowing that such a false representation would deprive claimants of their own insurance coverage, such as uninsured motorist coverage required by La. R.S. 22:1295, and perhaps other insurance. *See Plumb v. City of New Orleans*, 854 So. 2d 426 (La. App. 4 Cir. 2003) (plaintiff denied coverage under his own uninsured motorist insurance when NOPD police car struck his vehicle); *Sumner v. Mathes*, 52 So. 3d 931 (La. App. 4 Cir. 2010) (plaintiffs denied uninsured motorist coverage where City sanitation department vehicle caused collision). In *Sumner*, the City's Deputy Director of Finance, Derek Muse, testified that the City was not insolvent and had created a list of judgments and "some orderly fashion of paying them." 52 So.3d at 933. As a result of that representation, the Court held that the plaintiff could not recover from her own uninsured motorist coverage, because the City was self-insured.

9.

The City's policy and practice of not timely paying judgments has existed for decades, and is well-known. *See e.g. Bruno v. New Orleans*, 724 F. Supp. 1222 (E.D. La. Nov. 7, 1989). See also Robert McClendon, **New Orleans owes more than $34 million in legal judgments, has no plan for paying them**, NOLA.COM, October 30, 2014, Exhibit C; Robert McClendon, **New**

**Orleans City Council might bypass mayor to pay long-standing court judgments**, NOLA.COM, June 25, 2015, Exhibit D.  The City of New Orleans now has more than $41 million in unpaid judgments.

10.

The City's recalcitrance is evidenced by the fact that the 684 unpaid settlements and judgments date back more than 20 years, to February 6, 1996.  (See Exhibit A).

11.

The City's agreement to pay certain court judgments by a date certain, while refusing to agree to a schedule of payments for other settlements and judgments is a violation of due process specifically prohibited by the Louisiana Constitution and the United States Constitution.   *See e.g. Consent Judgment in Reginald Adams v. City of New Orleans,* U.S.D.C. E.D. La. No. 15-1543 (Doc. 257, filed 6/15/17) (City agreement to pay $1,250,000.00 settlement over four years, copy attached, (Exhibit E).  While the Danziger Bridge families and Reginald Adams were deserving, the City has offered no justification for paying those judgments and not paying other federal judgments.

12.

Mayor Landrieu's proposed budget for fiscal year 2018 only includes $5 million to pay outstanding judgments and settlements.  See 2018 Proposed Budget Presentation, (Exhibit F).  This budget as well as prior budgets clearly evinces the fact that the City does not have a plan or a schedule to pay the 684 outstanding settlements and judgments believed to exceed $40 million.  *See* Kevin Litten, **New Orleans still short on what it owes in court judgments, some dating back to 1990's**, NOLA.com – The Times-Picayune, August 3, 2017, (Exhibit B).

13.

Despite multiple requests from the undersigned and discovery in other federal lawsuits, the City has not produced a written policy for payment of settlements and judgments that would provide a legal and constitutional basis for the City's arbitrary and capricious decisions to pay a few judgments and refusal to pay the 684 currently unpaid settlements and judgments.  The only City Code article concerning payment of settlements and judgments is Section 70-6.  Payments of settlements and judgments, which provides,

> "The director of finance shall approve payments or other financial transactions which are necessitated by findings of ineligible or disallowed costs by the federal or state governments only when such payments or other transactions have been specifically approved by legislation adopted by the city council."  M.C.S. Ord. No. 18,095, Section 1, March 6, 1997.

**PARTIES**

14.

Plaintiffs in this action are:

1) Wade Crutchfield, a person of the age of majority domiciled in the Parish of Orleans, State of Louisiana, brother of the late-Kimberly Ann Crutchfield, individually and on behalf of the minor plaintiffs, for whom he was appointed co-tutor by Court Order dated November 21, 2011, *Succession of Kimberly Crutchfield,* CDC No. 2011-12163, Division "D-16";

2) Ronda Crutchfield, a person of the age of majority domiciled in the Parish of Orleans; aunt of the minor plaintiffs, individually and on behalf of the minor

plaintiffs, for whom she was appointed co-tutor by Court Order dated November 21, 2011, CDC No. 2011-12163, Division "D-16";

3) Diane Crutchfield, a person of the age of majority domiciled in the Parish of Orleans, State of Louisiana, mother of the late-Kimberly Ann Crutchfield, individually and in her capacity as the independent administratrix for the *Succession of Kimberly Ann Crutchfield* by Court Order dated November 21, 2011, CDC No. 2011-12164, Division "E-7", and on behalf of the minor plaintiffs, for whom she was appointed undertutrix by Court Order dated November 21, 2011, CDC No. 2011-12163, Division "D-16";

4) Terry Lomond Johnson, III, a minor domiciled in the Parish of Orleans, child of the late-Kimberly Crutchfield, whose claim is being prosecuted on his behalf by Wade Crutchfield, Ronda Crutchfield, and Diane Crutchfield; and

5) Teah Demetria Johnson, a minor domiciled in the Parish of Orleans, child of the late-Kimberly Crutchfield, whose claim is being prosecuted on her behalf by Wade Crutchfield, Ronda Crutchfield, and Diane Crutchfield.

15.

Plaintiffs seek to represent a class defined as,

**All persons, similarly situated, who have entered into a settlement or consent judgment with the City of New Orleans, pursuant to which the City voluntarily obligated itself to pay, and have not been paid by the City.**

16.

Plaintiffs propose to divide the class into two sub-classes:

8

1)  A subclass of all persons and entities who have obtained consent judgments or settlements against the City of New Orleans, who have not been paid; and

2)  A subclass class of all attorneys who have been deprived of contingency fees due to the City of New Orleans' policy and practices of not paying settlements and consent judgments to the persons and entities described in subclass A.

17.

Made Defendant is the City of New Orleans, a municipality and political sub-division of the State of Louisiana, located in Orleans Parish, established pursuant to its Home Rule Charter and statutes, which has the capacity to sue and be sued.

18.

Made Defendant is Hon. Mitchell J. Landrieu, Mayor of the City of New Orleans and Orleans Parish, who is sued in his official capacity. Mayor Landrieu is the chief executive officer and is a policy maker for the City of New Orleans. See City Charter Section 4-206. Mayor Landrieu appoints and directs the City Attorney, who acts at the Mayor's direction in implementing the policies and practices of refusing to pay settlements and judgments. *Id.* Mayor Landrieu appoints and directs the City's administrative and financial officers and staff, who act at the Mayor's direction in implementing the policies and practices of not purchasing insurance. *See Id.*

19.

Mayor Landrieu and those acting under his direction prepare the City's proposed Annual Operating Budget and submit the proposed Annual Operating Budget to City Council. See City Charter Section 6-102.

20.

Mayor Landrieu has continued and implemented the City's policies and practices of not paying settlements or consent judgments, not obtaining insurance while purporting to be self-insured.

21.

Made Defendants are the members of the New Orleans City Council, Stacy Head, Susan Guidry, Nadine Ramsey, James Gray, II, Jason Williams, LaToya Cantrell and Jared Brossett ("hereinafter collectively referred to as the City Council'), who are sued in their official capacities. The City Council, composed of its members, is the legislative authority and is a policy maker for the City of New Orleans. See City Charter, Section 3-101 ("All legislative powers of the City shall be vested in the Council and exercised by it in the manner and subject to the limitations herein set forth").

22.

The City Council is the appropriating authority for the City of New Orleans and has the authority of adopt the City's Annual Operating Budget and is required to approve bond financing for the City's debts.  See City Charter Sections 3-113, 3-115 and 3-119.  The City Council has the power to "increase, decrease, or delete any item of appropriation recommended by the Mayor. Upon concurrence of two-thirds of its members, it may add new items of appropriation or subdivided items of appropriation.  City Charter Section 3-115 (2).

23.

The City Council has continued and implemented the City's policies and practices of not paying settlements and judgments, not appropriating funds to pay settlements and judgments and not obtaining insurance.

**JURISDICTION AND VENUE**

24.

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 28 U.S.C. §2201 (declaratory judgment) and 28 U.S.C. §1367 (supplemental jurisdiction), as plaintiffs seek redress and protection of their Constitutional rights under 42 U.S.C. §1983, §1985 and §1988, and under Louisiana law.

25.

There is a federal interest in this litigation, because the 684 unpaid settlements and consent judgments against the City of New Orleans include federal court lawsuits.

26.

There is a federal interest in this litigation, because all defendants are domiciled the City of New Orleans has violated the 14th Amendment, the Fifth Amendment and the Contracts Clause, Article I, Section 10, of the United State Constitution by breaching contractual obligations to pay negotiated settlements, which were formalized in written settlement agreements and consent judgments.

27.

Venue is appropriate in this judicial district, pursuant to 28 U.S.C. §1391, because all defendants are domiciled in this district and the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## ALLEGATIONS OF FACTS AND PROCEDURAL HISTORY

28.

On September 21, 2011, Kimberly Crutchfield collided with a New Orleans Police Department's police car, which was parked before daybreak in the left lane, without lights, in a location which made it impossible for Ms. Crutchfield to see or avoid the vehicle on the downslope of the Interstate 10 High-Rise bridge, in a location which made it impossible for Ms. Crutchfield to avoid the vehicle. Ms. Crutchfield suffered multiple, horrific and ultimately-fatal injuries, and died the next day. She was a single mother who left behind two small children ages 5 and 10.

29.

The City had not purchased insurance for the police car or Officer Dabney.

30.

Plaintiffs, Wade Crutchfield, et al, sued the City of New Orleans, Officer Dabney and other motorists in state court on September 20, 2012. *Wade Crutchfield v. City of New Orleans*, Civil District Court for the Parish of Orleans, No. 2012-8949.

31.

Plaintiffs and the City of New Orleans participated in a mediation before Hon. Juana Lombard on August 31, 2016, during which the City agreed to entry of a Consent Judgment in the amount of $925,000. See Memorandum of Settlement Agreement and E-Mail, Exhibit G. At that time, the City Attorney's Office represented to plaintiffs that the City was participating in a bond financing transaction which could enable payment.

12

32.

The Consent Judgment was signed by Judge Julien on November 10, 2016, and was entered on the court's minutes on November 18, 2016, (copy attached, Exhibit H).

33.

On March 13, 2017, plaintiffs' counsel asked the City Attorney's Office about the status of the settlement payment (Letter attached, Exhibit I). On March 14, 2017, Deputy City Attorney Derek M. Mercadal responded:

> As you may know, the City agreed to settle nearly $10 million in old federal lawsuits at the end of 2016. While the City has and will continue to seek ways to pay its liabilities, at this time, we are not able to determine when any more amounts will be appropriated by the City Council for this purpose. Once additional amounts are appropriated, a process will proceed to address the settlements and judgments that are in-line for payment. As attorney for the plaintiffs in this matter, you will be notified once funds become available to satisfy your judgment. (3/14/17 E-Mail, Exhibit J).

34.

On August 18, 2017, the City Attorneys' Office provided a copy of the City's Unpaid Settlements / Judgments List, Exhibit A. The Crutchfield's Consent Judgment with the City is presently number 667 on the City's list of unpaid settlements and judgments.

35.

The City has not informed plaintiffs when or how the consent judgment will be paid. On information and belief, the City Council has not even attempted to appropriate funds for the payment of the judgment nor has the Mayor requested or proposed payments.

36.

If the City had purchased liability insurance for the police car involved in the fatal September 21, 2011, accident, Kimberly Crutchfield's family could have received payments from

the insurer, because the City's insurers are not protected by governmental immunity. *See Musmeci v. American Auto. Ins. Co.*, 146 So. 2d 496 (La. App. 4 Cir. 1962).

37.

On Information and belief, the City has handled all other settlements on Exhibit A in a manner identical or sufficiently similar to how it has handled the Crutchfield Consent Judgment.

**CLASS ACTION ALLEGATIONS**

38.

This case is distinguishable from prior litigation in that that plaintiffs seek payment of amounts specifically and voluntarily agreed to by the City in the settlements agreements and consent judgments signed by this and other courts.

39.

Plaintiffs also seek declaratory and injunctive relief to end the City's egregious behavior, which will benefit the entire class and future claimants.

40.

Proposed class representatives Wade Crutchfield, Ronda Crutchfield, and Diane Crutchfield are qualified to serve as class representatives. They are ready, willing, and able to fulfill the duties of class representatives to litigate this matter on behalf of all class members and have retained counsel with experience in class actions, civil rights lawsuits, and complex litigation. Wade Crutchfield, Ronda Crutchfield, and Diane Crutchfield have incurred emotional distress, denial of payments of judgments, court costs, attorneys' fees, and other injuries similar to those incurred by other members of the proposed class. The named Plaintiffs are typical of the claims of the entire class, since the named Plaintiffs are members of the class and all relief will inure to

14

the benefit of the class. The named Plaintiffs and other members of the class were harmed by the policies and practices of the City of New Orleans, which have denied them compensation, in the same manner and by the same means.

41.

The attorneys of the Rodney & Etter, LLC law firm are experienced and capable of representing the class in this litigation. Roy J. Rodney, Jr. and John K. Etter have represented plaintiffs and defendants in federal and state court class actions and civil rights litigation.

42.

The class is sufficiently numerous and is so numerous that joinder of individual members is impracticable as evinced by the Unpaid Settlements / Judgments List, Exhibit A (listing 684 matters).

43.

Common questions of law and fact exist in this litigation that impact the rights of each member of the class, since Plaintiffs' and class members' damages and injuries resulted from a common course of conduct by the City, which caused similar damages to all members of the proposed class. Common issues include the actions or inactions of the City, the policies and practices of the City in not timely paying settlements and judgments, the policies and practice of the City in not obtaining insurance, and the impacts of the City's policies and practices. The rights of each member of the class are the same, as is the duty by of the City to each member of the class to pay the settlement or judgment.

44.

The class can be defined objectively in terms of ascertainable criteria based upon the unpaid state court and federal court settlements and consent judgments against the City of New Orleans. Class membership can be determined by data readily available from the City's records, such as the City's Unpaid Settlements / Judgments List, Exhibit A, and court records.

45.

Class adjudication is appropriate and required, pursuant to Rule 23 (b) (1), because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the City, and adjudications with respect to individual members of the class might be dispositive of the interests of the other class members or might substantially impair or impede other class members' ability to protect their interests.

46.

Class adjudication is appropriate and required, pursuant to Rule 23 (b) (2), because the City acted or refused to act on grounds generally applicable to the class, including but not limited to the City's failures to timely pay judgments and failures to obtain insurance.

47.

Class adjudication is also appropriate and required, pursuant to Rule 23 (b) (2), since plaintiffs seek declaratory and injunctive relief, which would apply to the entire class.

16

48.

Class adjudication is also appropriate and required pursuant to FRCP Rule 23 (b) (3), because questions of law and fact common to the members of the class predominate over any questions affecting only individual class members. Class adjudication will be superior to other available methods for the fair and efficient adjudication of the matters at issue. The determination and vindication of public policies and interests regarding the conduct of the City of New Orleans and providing compensation to class members justify the costs and burdens of class adjudication.

## CAUSES OF ACTION

## DEPRIVATION OF CIVIL RIGHTS UNDER COLOR OF LAW

49.

Plaintiffs and class members' rights to obtain a settlement or consent judgment against the City of New Orleans are codified in La. R.S. 13:5109.A, which provides "In any suit filed against the state of Louisiana, a state officer, a state agency, a local public official, or a political subdivision, the defendant, or the proper representative thereof, upon the advice and with the concurrence of the attorney general, district attorney, parish attorney, city attorney, or other proper official, as the case may be, may compromise and settle the claims presented in any such suit."

50.

The City's conduct is a violation of plaintiffs and class members' rights to substantive and procedural due process. Those rights exist unless there is an exception. In this case the immunity exception does not apply and the City's position is untenable.

17

51.

This case is distinguishable from all other cases because the City's Unpaid Settlements / Unpaid Judgments List and the City's admissions that it has no plan for paying judgments (Exhibit J) clearly indicate that the City has no intention of paying judgments and settlements, even during the lifetime of the plaintiffs and class members.

52.

The City's deprivation of any remedy for the plaintiffs and class members is also contrary to Louisiana's waiver of sovereign immunity, the rights to meaningful access to courts, and consequently the rights to due process.

53.

Despite their duty to compensate plaintiffs and class members and their knowledge of the harm that has resulted and will continue to occur, the City, the members of the New Orleans City Council, and Mayor Landrieu have acted intentionally and with deliberate indifference to the violation of the civil rights of plaintiffs and class members.

**IMPAIRMENT OF THE OBLIGATIONS OF CONTRACTS
IN VIOLATION OF U.S. CONSTITUTION ARTICLE 1, SECTION 10**

54.

The putative class members are seeking to enforce written settlement agreements and consent judgments, which have become contracts between the claimants and the City, in addition to adverse court judgments. The City's actions of refusing to pay agreed upon settlements and consent judgments are contrary to the Contracts Clause of the United States Constitution, Article I, Section 10, which provides in relevant part that, "No State shall pass any Law impairing the

Obligation of Contracts."    The plaintiffs and class members have been unable to obtain justice from the City, even by negotiated settlements agreements and consent judgments in violation of the Contracts Clause.

55.

The City's actions of entering into settlement agreements and consent judgments, knowing that the City would not honor its payment obligations in a reasonable time, as described above in Paragraphs 7, 9, 10, 12 and 31 through 33, are contrary to the Louisiana law of obligations, codified in Louisiana Civil Code article 1756, et seq., including the duty of good faith and fair dealing, per Civil Code article 1759, and the requirement for performance within a reasonable time, contained in Civil Code article 1778.

56.

The City, the members of the New Orleans City Council, and Mayor Landrieu impaired the contractual rights of plaintiffs and class members by creating and implementing entering into settlement agreements and consent judgments, and representing to plaintiffs and courts that the City would pay those obligations, when the City and Mayor Landrieu knew that funds had not been appropriated and were not available to pay the judgments, as described above in Paragraphs 7, 9, 10, 12 and 31 through 35.

57.

Courts have denied uninsured motorist coverage to plaintiffs who were injured by City vehicles based on the legislative decision that the City of New Orleans and other self-insured entities are deemed to be "insurers" for purposes of the uninsured motorist coverage, under La.

R.S. 22:1295 (3), which provides that "Any party possessing a certificate of self-insurance as provided under the Louisiana Motor Vehicle Safety Responsibility Law, shall be an "insurer" within the meaning of uninsured motorist coverage provided under the provisions of this Section."  The City of New Orleans is not required to obtain a certificate of self-insurance from the Insurance Commission or have funds available to pay claims, because the legislature has exempted political subdivisions from the requirements imposed on private entities to be self-insured. See La. R.S. 32:1041 and La. R.S. 32:1042.  See also Louisiana Attorney General Opinion No. 1987-530, 9/16/87; 1987 La. AG LEXIS 260 ("it is the opinion of this office that the City of Baton Rouge and Parish of East Baton Rouge are not required to comply with the state laws concerning Compulsory Motor Vehicle Liability Security, Proof of Financial Responsibility or Certificates of Self-Insurance").

58.

In *Sumner v. Mathes*, 52 So. 3d 931 (La. App. 4 Cir. Nov. 24, 2010), the insurance policy included an exclusion from Uninsured Motorist Coverage, which provided that "An "uninsured motor vehicle" does not include any motorized vehicle or equipment: . . . b. owned or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent."  The Court upheld the exclusion based upon La. R.S. 22:1295(3) and the City's representations that it was not insolvent and had a process for paying judgments, which would provide compensation for the City employee's fault.

59.

The City's repeated misrepresentations to courts that the City is self-insured, when the City has not satisfied the essential requirement criteria for being self-insured by not paying judgments

20

within 60 days, have interfered with insurance contracts between class members and their own vehicle liability insurers by depriving class members of their vested contractual rights in Uninsured Motorist coverage, as described in Paragraphs 8 and 57 through 58.

## DENIAL OF DUE PROCESS; THE CITY HAS NO IMMUNITY FROM JUDGMENT

60.

The City has denied plaintiffs and class members of recovery by misrepresenting that the City has immunity, when it actually is not immune from either being sued or paying judgments and settlements. Defendants have improperly relied for the City's policy of not paying settlements and judgments upon the last sentence of Louisiana Constitution Article XII, Section 10.C, which provides that "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered."

61.

The citizens of Louisiana waived sovereign immunity of the City of New Orleans by enacting Louisiana Constitution Article XII, Section 10, which provides that, "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property."

62.

The City has represented to this Court that it has immunity and this court has discussed the City's purported immunity. However, the City does not have true immunity under state or federal law. Instead, Article XII, Section 10.C of the Louisiana Constitution and La. R.S. 13:5109 only

21

provide protection from seizure of City assets. Being free from seizure is not immunity from paying settlements and judgments. Louisiana Constitution Article XII, Section 10.C and La. R.S. 13:1509.B (2)[1] do not grant the City, the members of the City Council, and the Mayor the right to refuse to appropriate funds to pay judgments and settlements.  It is that City's refusal to pay which represents a violation of plaintiffs and class members' constitutional rights.

63.

Louisiana Constitution Article XII, "Section10(A) sets forth the fundamental premise that neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property. As Section 10(A) sets forth a mandatory prohibition against sovereign immunity in tort and contract suits, it is a self-executing constitutional provision. *Chamberlain v. State ex rel. Department of Transp.*, 624 So. 2d 874, 881-882 (La. Sept. 3, 1993).  "Section 10(A)'s self-executing nature is evidenced still further by the objects it was meant to accomplish, to wit: (i) expressly alleviating the requirement under the prior constitution of obtaining legislative consent to sue the state in tort and contract, (ii) affirmatively reserving to the people the right to sue the state in such cases, and (iii) concomitantly limiting the legislature's power to modify that constitutional right. The latter limitation on the legislature's power is a necessary corollary of Section 10(A)'s self-executing nature, as self-executing provisions generally limit the legislature's power to legislate in the field by removing the substantive parameters of the

---

[1] La. R.S. 13:5109.B (2), provides in relevant part that "[a]ny judgment rendered in any suit filed against . . . a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only . . . out of funds appropriated for that purpose by the named political subdivision."

constitutionally conferred right from legislative control. Accordingly, while the legislature can enact procedural requirements for enforcing the right to sue granted under Section 10(A) -- indeed Section 10(C) mandates that the legislature do so -- the legislature cannot enact substantive requirements that would curtail, abridge, impair or burden the exercise of such constitutionally conferred right. *Chamberlain v. State ex rel. Department of Transp*., 624 So. 2d at 882.

64.

"In prohibiting immunity from liability as well as from suit, the framers clearly intended that the state not be afforded substantive defenses, unavailable to private litigants, based simply on its governmental status." *Chamberlain v. State ex rel. Department of Transp.,* 624 So. 2d 874, 886 (La. Sept. 3, 1993).

65.

"The State is not exempt from the principles of fair dealing and does not enjoy sovereign immunity to breach its contractual obligations or to engage in activity that deliberately causes injury to person or property." *State v. Murphy Cormier Gen. Contrs., Inc*., 170 So. 3d 370, 381 (La. App. 3 Cir. June 3, 2015)

66.

Article XII, Section 10(C) "is aimed at protecting the public fisc and seeks to avoid governmental priorities being upset by the payment of substantial money judgments. To accomplish that goal, Section 10(C) also allocates to the legislature the power to enact legislation with respect to the enforcement of judgments against the state and to provide for appropriations. Provided such legislation comports with due process, equal protection, and the other constitutional

guarantees, such legislation is valid." *Chamberlain v. State ex rel. Department of Transp.*, 624 So. 2d 874, at 883.

67.

It is also a denial of due process to force citizens to reduce the settlement and judgment amounts to obtain payment, with the threat that the claimant may never receive payment if they do not agree to reduce the amount they are owed by the City.   This violation of due process distinguishes this case from prior cases involving the City's refusal to pay.

## Denial of Equal Protection in Violation of the 14th Amendment

68.

Even if the City were to have an applicable immunity, it has not managed the payment of settlements and judgments in a way that would allow it to maintain an immunity.

69.

To maintain immunity under the Constitution a government entity must have a transparent process that results in eventual payment based upon rational classifications that protects the claimants' rights.  *Compare Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129 (5th Cir. La. Oct. 22, 1986) (upholding school board's rational classifications and written policy on payment of judgments).  The City's list of unpaid settlements and judgments dating back to 1996, and the City's arbitrary and capricious payment of a few selected judgments, without any established policy, as described in Paragraphs 7 and 9 through 11, does not provide the constitutionally required due process and equal protection.  Instead, the City's practices confirm the ancient legal maxim that, "justice long delayed is justice denied."

70.

Defendants, through the City's policies and practices, have denied equal protection to plaintiffs and class members by refusing to pay certain state and federal settlements and consent judgments, while arbitrarily deciding to pay other settlements and judgments, and obtaining bond financing to pay a few high-profile judgments, such as the Danziger Bridge claims.

71.

The City's actions in forcing claimants to renegotiate settlements and judgments, and arbitrarily paying some judgments while not paying others, as described in Paragraph 7, has resulted in some class members being treated differently than others.  This is a key difference from *Freeman Decorating Co. v. Encuentro Las Ams. Trade Corp.,* 352 Fed. Appx. 921 (5th Cir. La. Nov. 5, 2009), where there was no evidence that the City treated Freeman's judgment differently than other judgments.

**CONSPIRACY TO DENY DUE PROCESS**

72.

Defendants, individually and through their employees, agents and others under their direction and control, acting under color of law, conspired to deprive plaintiffs and class members of Constitutionally-protected rights, in violation of 42 U.S.C. section 1985, as evidenced by their refusals to pay judgments and settlements.

73.

The City of New Orleans, Mayor Landrieu, and the members of the City Council have engaged in a conspiracy to fraudulently enter into settlement agreements and consent judgment by misrepresenting that the City will pay in a reasonable time and by suppressing the truth that

judgments and settlements will not be paid for decades, contrary to the Louisiana law of contracts and obligations codified in Civil Code article 1953.

74.

The City of New Orleans, Mayor Landrieu, and the members of the City Council have engaged in a conspiracy to force people to renegotiate their settlements and judgments under duress by threatening to indefinitely delay payment, contrary to the Louisiana law of contracts and obligations codified in Civil Code article 1959.

75.

The City has violated the 14th Amendment by engaging in an abusive scheme to punish those who refuse to compromise and devalue their claims in an arbitrary and extrajudicial manner, as described in Paragraph 7.  In other words, the City is violating citizens' rights by threatening to violate their rights, and actually violating citizen's rights by moving them to a worse position on the list, further delaying the already interminable delay for payment.

76.

The City's officials and employees have jointly implemented, ratified, and continued the policies and practices of not paying judgments or settlements, despite a multitude of complaints, court cases, and media reports of the harmful effects of the City's conduct, without having any plan to pay the 684 unpaid settlements and judgments, as described in Paragraphs 9, 12 and 33. This knowing deprivation of civil rights could only continue if the Defendants had agreed to act in a conspiracy.

## VIOLATION OF THE FIFTH AMENDMENT;
## TAKING OF PROPERTY WITHOUT COMPENSATION

77.

Defendants have taken plaintiffs and class members' property in violation of the Fifth Amendment by refusing to pay consent judgments and settlements, and refusing to obtain liability insurance, such that the plaintiffs and class members have been deprived of compensation for injuries and damages caused by the City's acts, omissions, and breaches of contracts.

## NEGLECT OF DUTY TO PROTECT CITIZEN'S
## CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. SECTION 1986

78.

Defendants, individually and through their employees, agents and others under their direction and control, acting under color of law, neglected their duties to prevent the deprivation plaintiffs and class members' Constitutionally-protected rights, in violation of 42 U.S.C. section 1986. The Mayor, the City Council and the City have known for many years that the City has not appropriated enough funds to pay all settlements and judgments, but have not appropriated sufficient funds, and have not sought bond financing or other sources of funds.

79.

Defendants' actions and omissions were objectively unreasonable, such that defendants are not entitled to qualified immunity or statutory immunity.

80.

Defendants actions, omissions, policies, practices and deprivations of plaintiffs and class members' civil rights are continuing. The City's refusal to obtain insurance for its huge fleet of cars, ambulances, trucks, and other vehicles has made the deprivations of plaintiffs and class members' civil rights even worse and may prevent recovery from plaintiffs and class members

own insurance policies.  The City's continuing policy misrepresenting to courts that the City is self-insured, even though the City does not allocate funds to a self-insured pool.

## PLAINTIFFS ARE ENTITLED TO ENFORCE JUDGMENTS
## AND SETTLEMENTS BY WRIT OF EXECUTION

81.

The All Writs Act, 28 U.S.C. 1651, and Rules 69 and 70 of the Federal Rules of Civil Procedure authorize this Court to issue a writ of execution to enforce judgments against the City of New Orleans.

82.

When a public entity expresses its unwillingness to comply with a valid judgment, this federal court "may use any of the weapons generally at its disposal to ensure compliance." *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. Miss. May 14, 1980).

83.

The City is not entitled to protection under the generally recognized exception to Rule 69 (a) that a judgment creditor cannot avail itself of enforcement methods that are not available under state law.  The City's failure to appropriate funds to pay judgments and settlements is a purposeful, arbitrary, and capricious act, which is simply designed to violate plaintiffs and class members' constitutional rights.

84.

The general rule adopted by this Court that Rule 69 cannot be used to collect settlements and judgment against the City of New Orleans should not apply, because that rule is based upon a

28

misinterpretation of Louisiana Constitution Article XII, Section 10 and La. R.S 13:5109, as described in Paragraphs 60 through 67, above.

85.

This Court should not allow principles of comity to prevent it from recognizing a conspiracy to deprive citizens of their constitutional rights, that is occurring even in this courthouse. Requiring the City what it has already agreed to pay and to desist from schemes to force claimants to take less under the threat of never recovering is an outrageous circumvention of this court and state courts that requires federal court intervention. It is the same federal intervention that is required when the Constitution is violated by local officials in voting rights, police misconduct and First Amendment cases. A scheme to avoid paying almost every judgment and settlement against the City is not an act which justifies this Court deferring due to federal – state relations, any more than any of the constitutional violations cited above.

86.

The City should be forced to pay the settlements and consent judgments, pursuant to a writ of execution, because there is a federal interest in payment of those claims as has been recognized in several cases, especially since the City's failure to pay is based upon violations of Constitutional rights. *See e.g. Benson v. Reg'l Transit Auth*., 2015 U.S. Dist. LEXIS 121314, \*4 (E.D. La. Sept. 10, 2015) (" A federal interest is sometimes obvious, such as in civil rights actions.") "The Fifth Circuit has also recognized, however, that a federal interest can exist even in a diversity lawsuit under certain circumstances. In *Freeman*, for example, the Fifth Circuit recognized a sufficient federal interest "when a state makes abundantly clear that it will never satisfy the judgment." *Id.* Failure to pay in twenty-one years is long enough.

29

87.

The Fifth Circuit held in *Freeman Decorating Co. v. Encuentro Las Ams. Trade Corp.*, 352 Fed. Appx. 921, 925 (5th Cir. La. Nov. 5, 2009), that "[I]f the City's behavior reaches the level of recalcitrance required under *Gates*, Freeman will be able to file a new Motion for Order Directing the Mayor of New Orleans to Satisfy Judgment and to Authorize Issuance of a Writ of Fieri Facias." The City's refusal to pay settlements and judgments has reached and surpassed that threshold, as evidenced by the 684 unpaid settlements and judgments on the City's list.

88.

This Court should enter a writ of execution against the assets of the City of New Orleans, so that plaintiffs and class members will be able to enforce their settlements, judgments and consent judgments.

89.

Alternatively, and in addition, this Court should issue a *writ of fieri facias* directing the seizure and sale of the City's property, per Louisiana Code of Civil Procedure article 2291, et seq. piercing the City's limited immunity against seizure.

**DECLARATORY, INJUNCTIVE, AND EQUITABLE RELIEF**

90.

This Court has the power to supervise the City of New Orleans to correct the violations of due process and equal protection that have been caused by the City's refusal to pay consent judgments and agreed settlements, through injunctive and declaratory relief. *See Evans v. City of Chicago*, 995 F.2d 1393 (7th Cir. Aug. 19, 1993) (affirming entry of consent decree); *vacated due*

*to Chicago's changes in policy for payment of judgments by Evans v. City of Chicago*, 10 F.3d 474

(7th Cir. Ill. Nov. 24, 1993).

91.

Plaintiffs and class members are entitled to and seek the following declaratory, injunctive, and equitable relief:

1) A declaration that plaintiffs and class members are entitled to payment of settlements and consent judgments against the City, with all deliberate speed, within a reasonable time to be determined by this Court;

2) A declaration that the City's policy and practice of not paying settlements and consent judgments has deprived plaintiffs and class members of their civil rights;

3) A declaration that the City's policy and practice of not paying settlements and consent judgments constitutes a taking of the property of plaintiffs and class members;

4) Injunctive relief ordering the City to submit a schedule for the payment of all currently unpaid settlements and judgments to this Court;

5) Monitoring of the City's payment of settlements and judgments by this Court;

6) Injunctive relief ordering the City to obtain insurance by a date certain and maintain that insurance coverage in the future;

7) Monitoring of the City's insurance coverage by this Court;

8) Issuance of a writ of execution against the City's assets;

9) Issuance of a *writ of fieri facias* directing seizure and sale of the City's property; and

10) Such other declaratory, injunctive, or equitable relief as may be just in the circumstances.

## DAMAGES

92.

As a direct and proximate result of the joint acts or omissions of Defendants and their officers, employees, and agents identified in this Complaint, each of the plaintiffs and class members has suffered monetary and non-monetary harm including deprivation of Constitutional rights and loss of property.

93.

The damages sustained by the plaintiffs and class members are the failure to receive the funds from the settlements and consent judgments, agreed to pay and attorneys' fees. The amounts listed on the Unpaid Settlements / Judgments List are perhaps the most definitive measure of damages. Those amounts are exactly the compensation that the plaintiffs and class members have been deprived of by the City.

94.

As a result of Defendants' conduct, plaintiffs and class members have suffered and will suffer and are entitled to compensation for:

1) Payment of the settlement or judgment amount;

2) Judicial interest at the rate provided in La. R.S. 13:4202, from the "Interest Start Date" indicated on the City's Unpaid Settlements / Judgments List, Exhibit A, or the date of settlement if the "Interest Start Date" is not specified;

3) Compensation for emotional distress, in an amount to be proven at trial;

32

4) Compensation for non-pecuniary loss, per Louisiana Civil Code article 1998, in an amount to be proven at trial;

5) Consequential damages, per Louisiana Civil Code article 1997, in an amount to be proven at trial;

6) Compensation for deprivation of civil rights;

7) Such other damages as may be proven at trial.

## ATTORNEYS' FEES AND COSTS

95.

Plaintiffs and class members are entitled to an award of reasonable attorneys' fees, expert fees, and court costs, pursuant to 42 U.S.C. section 1988.

96.

Plaintiffs are entitled, in the alternative, to an award of reasonable attorneys' fees and non-taxable costs in this class action, per Rule 23(h) of the Federal Rules of Civil Procedure.

## CONCLUSION

97.

This Court has repeatedly stated that it is sympathetic to plaintiffs who have received monetary judgments against the City.[2] The Court's sympathy has merely emboldened the City to become more recalcitrant and obstinate.

---

[2] "As this Court observed approximately ten years ago, this court recognizes and sympathizes with plaintiffs' plight in getting judgment against the State or political subdivision satisfied." *Benson v. Reg'l Transit Auth.*, 2015 U.S. Dist. LEXIS 121314, *10 (E.D. La. Sept. 10, 2015). *See also Bennett v. City of New Orleans*, 2004 U.S. Dist. LEXIS 347, *27 (E.D. La. Jan. 9, 2004) ("The Court is not indifferent to plaintiffs' plight and to their frustration at being unable to collect on their lawful judgments. Nor is the Court unmindful of the potential for abuse presented if the City could arbitrarily thumb its nose at these judgments.").

98.

In Kimberly Crutchfield's case, part of the damages was for her children's loss of their mother's love and support.  By the time her children are paid by the City, they will no longer be children and will no longer be able to benefit from services, education and other assistance that was supposed to compensate for the loss of their mother.

99.

The plaintiffs and class members who wait decades for payment, risk their own mortality and the devaluation of the amounts the City contracted to pay and represented to the Courts that it would pay.

100.

"Federal courts are not reduced to issuing (judgments) against state officers and hoping for compliance." *Gates v. Collier*, 616 F.2d 1268, 1271 (5th Cir. Miss. May 14, 1980).  The actions of the City over more than twenty years have reduced the federal courts into hoping for compliance by the City of New Orleans.  By not paying 684 settlements and judgments the City of New Orleans, Mayor Landrieu, and the City Council "have made it abundantly clear that they intend to resist the judgment until the bitter end." *Gates v. Collier*, 616 F.2d at 1271 – 1272.

**PRAYER**

WHEREFORE, Plaintiffs, Wade Crutchfield, Ronda Crutchfield, and Diane Crutchfield, individually and on behalf of the minor plaintiffs, Terry Lomond Johnson, III and Teah Demetria Johnson, and individually and on behalf of a proposed class of similarly situated persons, pray for judgment against the City of New Orleans, the members of the New Orleans City Council, and

34

Mayor Landrieu, and pray for declaratory, injunctive or equitable relief, and an award of compensatory damages, costs and attorneys' fees, in amounts to be proven at trial.


Respectfully Submitted,


August 31, 2017


_____/s/ John K. Etter_____

Roy J. Rodney, Jr. (La. Bar No. 2079)
John K. Etter (La. Bar No. 25042)
Rodney & Etter, LLC
365 Canal Street, Suite 2690
New Orleans, LA 70130
Telephone: 504-483-3224
Facsimile: 504-483-2259
E-Mail: rjr@rodneylaw.com
E-Mail: jke@rodneylaw.com